444 P.2d 771

Kelly D. NOLAND, Plaintiff-Appellant,

v.

YOUNG DRILLING COMPANY and United States Fidelity & Guaranty Company, Defendants-Appellees.

No. 151.

Court of Appeals of New Mexico.

Aug. 16, 1968.

James L. Brown, John R. Phillips, Jr., Farmington, for appellant.

Charles M. Tansey, Tansey, Rosebrough, Roberts & Gerding, Farmington, for appellees.

## OPINION

SPIESS, Chief Judge.

This is an appeal from the dissmissal of a workman's compensation claim on the ground that it was not timely filed. This claim was for loss of a scheduled member by amputation which resulted directly from a prior compensable injury for which no claim was paid. The question involved is whether the time when a claim must be filed is to be computed from the date of the loss of the scheduled member, or from the time of failure or refusal to pay compensation for the compensable injury which caused the loss of the member.

The claimant, Kelly D. Noland, was employed by defendant, Young Drilling Company, and sustained several injuries while being so employed. On or about the first of March, 1964, claimant injured his right index finger and, although it became numb for a period of time, he treated the injury as trivial and continued working.

During December of 1964 claimant sustained an injury to his right wrist which he likewise considered trivial and continued working. On or about March 1st, 1965, claimant's right index finger was again injured. This injury was likewise considered by claimant to be trivial at the time it occurred. On March 6, 1965, however, the claimant did obtain medical attention because of pain in the right finger and right wrist, and further because the injury to the finger would not heal.

It appears that the injury to claimant's right wrist in December of 1964 damaged a blood vessel and caused a loss of circulation to the finger. In an attempt to restore circulation claimant was operated on June 3, 1965, and a blood vessel transplanted in an attempt to increase the supply of blood to the finger. The testimony discloses that although the transplant had been accomplished the finger did not heal and an amputation of the tip of the finger was performed on February 8, 1966. Thereafter a further amputation at the proximal joint became necessary and was preformed on June 27, 1966. The claim involved appears to be based upon the loss of the finger at the proximal joint.

As a basis for dismissal of the action the trial court found, among other facts, that claimant knew as early as March 6, 1965, that his injuries, which included his index finger, were serious; that the injury was not latent, at least after March 6, 1965, when claimant consulted the doctor; and claimant knew at least as early as December 14, 1965, that he might lose a portion of his finger. The trial court further found that claimant was off work and unable to work from June 3, 1965, until September 21, 1965, as a result of the in-

juries of March 10, 1964, and December, 1964, and the operation which was performed as a result of these injuries. No compensation was ever paid claimant on account of the accidents and injuries. The trial court found that there was a causal connection between the accident of December, 1964, and the amputation of claimant's finger.

We are satisfied from a review of the record that these findings have substantial support in the evidence. The record and findings make it abundantly clear that claimant was fully aware of his condition, at the time he was operated, June 3, 1965. He was likewise unquestionably entitled to be paid compensation for the period June 3, 1965, to September 21, 1965, as a result of the unjuries which necessitated the amputation on June 27, 1966. Yet no claim was filed until February 8, 1967.

The applicable statute of limitations, § 6, subd. A. Chapter 269, Laws of 1963, is as follows:

"If an employer or his insurer fails or refuses to pay a workman any installment of compensation to which the workman is entitled under the Workmen's Compensation Act, after notice has been given as required by Section 59–10–13.4 New Mexico Statutes Annotated, 1953 Compilation, it is the duty of the workman, insisting on the payment of compensation, to file a claim therefor as provided in the Workmen's Compensation Act, not later than one year after the failure or refusal of the employer or insurer to pay compensation. This one-year period of limitations shall not be tolled during the time a workman is employed by the employed [sic] by whom he was employed at the time of such accidental injury.

"If the workman fails to give notice in the manner and within the time required by § 59–10–13.4 New Mexico Statutes Annotated, 1953 Compilation, or if the workman fails to file a claim for compensation within the time required by this section, his claim for compensation, all his right to the recovery of compensa-

tion and the bringing of any legal proceeding for the recovery of compensation are forever barred."

The Supreme Court has held that the failure to pay compensation when it becomes payable starts the period of limitations running. Garcia v. New Mexico State Highway Department, 61 N.M. 156, 296 P.2d 759 (1956); Jowers v. Corey's Plumbing & Heating, 74 N.M. 555, 395 P.2d 827 (1964).

The claim filed February 8, 1967, was not timely unless, as claimant contends, the amputation of the finger February 8 and June 27, 1966, is to be treated as a claim or cause of action separate and distinct from the accident and injury which caused the amputation and the limitation statute is to be considered as commencing as of the date of amputation.

The wording of the limitation statute indicates that the period of limitation begins to run from the time of employer's failure to pay compensation when the disability can be ascertained and the duty to pay arises. See Anderson v. Contract Trucking Co., Inc., 48 N.M. 158, 146 P.2d 873 (1944). In the view we take this language does not mean the particular class of disability for which compensation is asked but any compensable disability which arises from an accident and eventually results in the class of disability for which claim is made. The statute makes no distinction between loss of specific body members such as the right index finger and injuries to other parts of the body not specifically mentioned which result or may result in a form of disability, permanent or otherwise.

It is our opinion, excluding a compensation claim for the death of a workman, that all injuries producing a compensable disability and subsequently becoming more serious should be treated alike and the same rule applied to all of them. It is not meant that a workman will lose the statutory benefit unless he files claim for a non-compensable injury which he has no reason to believe will result in a seri-

ous and compensable injury. Nor does it mean that he can disregard a compensable injury and wait until permanent incapacity results therefrom before he is obliged to file his claim. As soon as it becomes reasonably apparent, or should become reasonably apparent to a workman that he has an injury on account of which he is entitled to compensation and the employer fails or refuses to make payment he has a right to file a claim and the statute begins to run from that date. There is nothing in the act as we read it which indicates that the running of the statute may be delayed until a more serious disability is ascertainable.

In reaching a like result, the Supreme Court of Nebraska stated:

"The plaintiff urges in substance that the bar of the statute as applied under the rule does not become effective until the total of the condition becomes known. This is not a correct interpretation of the law. Knowledge that there is a compensable disability, and not the full extent thereof, is the thing which controls. Seymour v. Journal-Star Printing Co., 174 Neb. 150, 116 N.W.2d 297 (1962)."

In this case the amputation of claimant's finger was in the nature of a remedial measure which became necessary by reason of the prior injuries including, of course, the injury to the wrist. It would be unreasonable and require legislation by interpretation on our part to hold that the statute commences to run anew as to each or any particular remedial procedure which is employed in an effort to effect a cure or relief from the results of an injury.

Claimant cites and relies upon Rayburn v. Boys Super Market, Inc., 74 N.M. 712, 397 P.2d 953 (1964), as authority for his contention that his claim was timely filed. In Rayburn the claimant injured his back, was paid compensation until he resumed his employment. Thereafter no compensation was owing to him, nor did he make demand on his employer for its continuation. After a period of time had elapsed claimant was hospitalized and an operation performed upon his back as a result of the injury. The employer refused to pay compensation during the period claimant was disabled as a result of the operation. It was held that the statute did not commence to run at the time of the injury or thirty days thereafter for the reason that at that time there was neither a failure nor refusal on the part of the employer to pay compensation. It appears to have been fully paid. The first refusal occurred after the operation and it was then the Supreme Court held that the statute started to run and that the claim filed within one year from such refusal was timely.

In the instant case compensation was due and unpaid claimant when he was disabled on account of the wrist operation and during the period June 3, 1965, to September 21, 1965, the statute commenced to run following non-payment of compensation in July of 1965. No claim was filed for some twenty months after claimant became entitled to payment.

The apparent difference between Rayburn and the present case relates to the time when the statute of limitations commences to run. In the present case the statute commenced to run more than one year before the claim was filed. Whereas, in Rayburn the claim was filed within one year from the date the statute commenced to run and consequently was timely.

We have not overlooked Cordova v. City of Albuquerque, 71 N.M. 491, 379 P.2d 781 (1962), and Salazar v. Lavaland Heights Block Company, 75 N.M. 211, 402 P.2d 948 (1965), cited by claimant. These cases in our opinion do not lend support to claimant's position.

In accordance with the findings of the trial court, which, as we have said, are substantially supported, it is our opinion that the court properly dismissed the claim. The judgment of the trial court should be affirmed.

It is so ordered.

OMAN and ARMIJO, JJ., concur.