692 P.2d 27

**Shawn SMITH, Petitioner,**

v.

**DOWELL CORPORATION, A DIVISION OF DOW CHEMICAL, USA, and Aetna Life & Casualty Company, Insurer, Respondents.**

No. 15167.

Supreme Court of New Mexico.

Sept. 21, 1984.

Rehearing Denied Dec. 13, 1984.

Prince, Schmidt & O'Friel, Daniel J. O'Friel, Winston Roberts-Hohl, Santa Fe, for petitioner.

Catron, Catron & Sawtell, John S. Catron, Santa Fe, for respondents.

## OPINION

SOSA, Senior Justice.

Plaintiff-Appellant, Shawn Smith (Smith) filed a claim for benefits under New Mexico Workmen's Compensation Act (Act), NMSA 1978, Sections 52–1–1 through 52–1–69 (Orig.Pamp. and Cum.Supp.1982) against his former employer Dowell Corporation (Dow). The district court granted summary judgment for Dow, stating plaintiff's claim was barred by his failure to timely file under Section 52–1–31(A). In a memorandum opinion, the Court of Appeals affirmed. We granted certiorari and reverse the Court of Appeals.

The sole issue before the Court is when will a worker with a latent injury be held to reasonably recognize the nature and probable, compensable character of the injury, thus activating the running of the statute of limitations.

While in Dow's employ on August 12, 1980, Smith suffered an accidental injury when a cement truck he was driving left the road and flipped over, crushing the cab. Smith continued working his regular job, but a month following the accident he had to be placed on light duty for a three week period. He then returned to his normal job. He continued to work for Dow until he was terminated December 4, 1981.

The record reflects that at Dow's request Smith was examined and treated at least twice by Dr. Hillmer, an orthopedic specialist, chosen by the company. Two letters written by Dr. Hillmer were placed in evidence as exhibits. The insurance company and Dow received the letters.

In a June 1, 1981 letter, Dr. Hillmer noted the following: Smith had three weeks of light duty about a month after the accident and then returned to his normal duties; his present job (at Dow) involved "heavy duty" work; his visits to a chiropractor were decreasing in frequency; and "[c]omplaints will become less severe * * * I do not feel he will have any permanent impairment from this accident." There was no finding of disability in the letter. In a second letter dated October 19,

1981, Dr. Hillmer concluded: "I still feel he will ultimately make a good recovery." Two months later Smith was terminated. He then joined the army.

Approximately three months after Dr. Hillmer's October letter, on January 25, 1982, army doctors informed Smith he had a permanent disability to his back resulting from the August 1980 accident. He received a medical discharge from the army. Thereafter, he attempted to find light duty work but was unsuccessful.

Smith filed a workmen's compensation complaint on November 18, 1982, within a year of the time the army doctors informed him of his disability. The complaint for benefits was denied by the district court under the statute of limitations bar, Section 52–1–31(A).

First, we set forth principles that are fundamental to the concept of the Workmen's Compensation Act. Since its inception, we have held that the Act was adopted to provide a humanitarian and economical system of compensation for the injured worker and should be liberally construed in favor of the claimant. *Gonzales v. Chino Copper Co.*, 29 N.M. 228, 222 P. 903 (1924). That is still the law today. *Transport Idemnity Co. v. Garcia*, 89 N.M. 342, 552 P.2d 473 (Ct.App.), *cert. denied*, 90 N.M. 9, 558 P.2d 621 (1976). If no guidelines are given by statute, fundamental fairness must be the guideline. *Id.* The Act was adopted for the protection of the worker, not the employer. *Clark v. Electronic City*, 90 N.M. 477, 565 P.2d 348 (Ct.App.), *cert. denied*, 90 N.M. 636, 567 P.2d 485 (1977).

Smith relies on *De La Torre v. Kennecott Copper Corp.*, 89 N.M. 683, 556 P.2d 839 (Ct.App.1976) as authority for the date to begin the running of the limitations statute. *De La Torre* holds: "Time does not begin to run until the disability is *discovered* rather than from the accidental occurrence." *Id.* at 686, 556 P.2d at 842 (emphasis added). The *De La Torre* court used the rationale that to hold otherwise would oppose the public policy of the State and

the philosophy underlying the Workmen's Compensation Act. *Id.*

Under Section 52–1–30 of the Act the employer is obligated to pay compensation on the "occurrence of disability." In a case recognizing the occurrence of latent injuries, the Court of Appeals has explained the difference between the terms "date of disability" and "date of accident" by stating:

> [I]f the claimant suffers an accident in the course of his employment which does not disable but ultimately leads to a later "malfunction of the body" resulting in disability, the continuing pain and degenerating ability to function constitute the operative "accident" which brings about the compensable "accidental injury" on the date of disability.

*Casias v. Zia Co.*, 93 N.M. 78, 79, 596 P.2d 521, 522 (Ct.App.), *cert. denied*, 93 N.M. 8, 595 P.2d 1203 (1979).

The record states that Smith was performing his regular job, one which Dr. Hillmer's letter described as "heavy duty." While Smith does not deny he had pain, he functioned in his regular job and the company doctor reported he would *not* have "permanent impairment from this accident," and would "make a good recovery."

The Court of Appeals states that "[t]he physician's reports, contained in the record, do not affirmatively state that plaintiff was not disabled." Smith continued to work, but because he had pain, the Court of Appeals held he could not reasonably rely on the diagnosis of the company's medical specialist. The Court of Appeals concluded "the workman was aware at all times of a compensable injury, even though he may not have appreciated its degree."

■ The rule for the discovery of a disability is that discovery occurs "[a]s soon as it becomes reasonably apparent, or should become reasonably apparent, to a workman that he has an injury on account of which he is entitled to compensation * * *" *ABF Freight System v. Montano*, 99 N.M. 259, 260, 657 P.2d 115, 116 (1982), (quoting *Noland v. Young Drilling Co.*, 79

N.M. 444, 447, 444 P.2d 771, 774 (Ct.App. 1968)).

It is essential to this limitations issue that we decide whether Smith should have known he was disabled prior to being so advised by army doctors. Here we have an employee performing his normal work duties. Additionally he is reassured twice by a company doctor, specializing in back injuries, that he has no permanent impairment. It would be patently unfair to expect the common laborer to have greater knowledge than the medical expert. *See Duran v. New Jersey Zinc Co.*, 83 N.M. 38, 487 P.2d 1343 (1971); *Pena v. New Mexico Highway Department*, 100 N.M. 408, 671 P.2d 656 (Ct.App.1983); *Sedillo v. Levi-Strauss Corp.*, 98 N.M. 52, 644 P.2d 1041 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982); *see also*, 3 A. Larson, *The Law of Workmen's Compensation*, § 78.-42(a) at 15–221 (1983).

A sister state dealt with a similar fact pattern by holding the worker should not be barred by limitations. *Bowerman v. Employment Security Commission*, Mont., 673 P.2d 476 (1983). In *Bowerman* the worker fell down a stairwell in 1976. He continued to work, but saw medical specialists in 1977 and 1979. When his symptoms worsened in March, 1980, his job performance was impaired. The claim he submitted in December, 1980 was disallowed by the trial court because it was not timely filed.

The Montana Court in reversing referred to 3 A. Larson, *supra*, Sections 78.40 to 78.42. Larson states:

> It is odd indeed to find, in a supposedly beneficent piece of legislation, the survival of this fragment of irrational cruelty surpassing the most technical forfeitures of legal statutes of limitation. Statutes of limitation generally proceed on the theory that a man forfeits his rights only when he *inexcusably delays* assertion of them, and any number of excuses will toll the running of the period. *But here no amount of vigilance is of any help.* The limitations period runs against a

claim that has not yet matured; and *when it matures, it is already barred.* A. Larson, *supra,* § 78.42(b), at 15–225, 15–226. (emphasis added).

■ Agreeing with the logic in Larson, *supra,* the Montana Supreme Court held that "in cases of latent injury * * * the time period for notice of claim does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable, compensable character of his latent injury." *Bowerman,* Mont., 673 P.2d at 479. This standard should apply as well in New Mexico. Here, we are concerned with the date of the "occurrence of disability" under Section 52–1–31. The letters from the company doctor assured both the employer and the worker that there was no permanent impairment. Under the facts of this case, it could not have been reasonably apparent to the worker or his employer that he had a latent disability while being told by a specialist he would make a "good recovery."

■ Under the Montana standard adopted by this Court for recognizing a latent injury, Smith could not have recognized the nature, seriousness and probable, compensable character of his back injury until he was so advised by army doctors on January 25, 1982. The statute of limitations therefore began to run on that date. Smith filed his workmen's compensation complaint on November 18, 1982, well within the limitations time under Section 52–1–31(A). *See Montano.*

Accordingly, we conclude that the district court erred in granting summary judgment. A full trial is proper on the issues presented by plaintiff Smith's claim, including the question of when the plaintiff discovered that there was a compensable injury.

The district court is reversed and the cause remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

FEDERICI, C.J., and RIORDAN, J., concur.

WALTERS, J., not participating.

STOWERS, J., dissenting.

STOWERS, Justice, dissenting.

The majority ignores the facts of this case and simply assumes that there is a latent injury. There is no latent injury in this case.

The following facts are undisputed. On August 12, 1980, the truck Smith was driving flipped over, crushing the cab of the truck. In his deposition, Smith stated that immediately after the accident he experienced substantial back pain and pain in a leg that caused him to limp for a week. More importantly, Smith stated, as the reason for seeking a physician's attention about one month after the accident, that "[he] knew that there had to be something wrong because [he] couldn't do [his] job at all." Smith further stated that although he often experienced extensive pain, he "felt that [he] should try to work through this pain." Smith received weekly or bi-weekly care and treatment from a chiropractor for continued back and neck pain and for numbness in hands and feet. Therefore, based on the undisputed facts and Smith's statements, Smith *knew* that he had a disabling injury at the time of the accident.

On November 18, 1982, two years and three months after his accident, Smith filed this action for relief under the Workmen's Compensation Act. Under NMSA 1978, Section 52–1–31(A), a workman who remains employed by the same employer from the time of an accident has a maximum period in which to file his workmen's compensation claim of two years and thirty-one days. *See ABF Freight System v. Montano,* 99 N.M. 259, 657 P.2d 115 (1982). Thus, Smith's claim is barred because he did not file his claim by September 13, 1982, the end of the limitation period.

By their assumption of a "latent injury" in this case, the majority circumvent the clear application of Section 52–1–31(A). This Court stated that in determining when the statutory period begins to run, "[t]he

**106**

important thing is whether the injury was not or could not have been discovered with reasonable diligence." *Letteau v. Reynolds Electrical & Engineering Co.*, 60 N.M. 234, 237, 290 P.2d 1072, 1074 (1955). Or, as more recently held by the Court in *ABF Freight Systems v. Montano:*

> the statutory period begins to run "[a]s soon as it becomes reasonably apparent, or should become reasonably apparent to a workman that he has an injury on account of which he is entitled to compensation and the employer fails or refuses to make payment he has a right to file a claim and the statute begins to run from that date." (Citation omitted.)

99 N.M. at 260, 657 P.2d at 116 (quoting *Noland v. Young Drilling Co.*, 79 N.M. 444, 447, 444 P.2d 771, 774 (Ct.App.1968)).

In this case, Smith was in pain and unable to perform his normal work from the date of the accident. Also, he stated that he "knew something * * * [was] wrong because [he] couldn't do [his] job at all." Therefore, Smith's injury was apparent, not latent; and the statutory period began on the date of the accident and ended on September 13, 1982.

The majority's statement that it would be unfair to expect a "common laborer" to have greater knowledge than a medical expert, is not relevant to any issue in this case. None of the cases cited by the majority support such a statement. In *Letteau*, relying on *Gonzales v. Coe*, 59 N.M. 1, 277 P.2d 548 (1954), we stated that "the mere fact that a claimant, from a medical standpoint, does not know the full extent of his injury does not relieve him from timely filing his claim for workmen's compensation." 60 N.M. at 238, 290 P.2d at 1074. The record reveals that Smith knew he was injured on the date of the accident. Thus, it was his burden to file a timely claim.

The majority relies on a quotation from *Casias v. Zia Co.*, 93 N.M. 78, 596 P.2d 521 (Ct.App.), *cert. denied*, 93 N.M. 8, 595 P.2d 1203 (1979), which does not address the holding of that case. The holding of *Casias* is represented more accurately by the following:

> (1) The statute of limitation does not begin to run when a non-disabling accident occurs, but rather when the workman knows or should know that he has sustained a compensable injury as a result of the accident. (Citations omitted.)

93 N.M. at 80, 596 P.2d at 523. Thus, *Casias* is consistent with the holdings of this Court that the workman's awareness of his injury begins the statute of limitations period.

In effect, the majority have overruled all prior "latent injury" cases. By dispensing with the "apparent injury" standard in favor of a standard that requires a reasonable man to recognize the "nature" of his injury, the "seriousness" of his injury, and the "probable, compensable character" of his injury, the majority have nullified the limitation period in Section 52–1–31(A). Such an over-burdened standard of proof is contrary to the intent of the Legislature and to the purpose of the statute.

In addition, by making the relative knowledge or education level of a claimant the premise of their rationale, the majority arguably have created a standard not previously recognized or applied to Section 51–1–31(A). Such an unsupported premise creates additional confusion in the application of the statute.

I would affirm the trial court.